REDACTED

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler
Robert H. Baron
Karin A. DeMasi
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

**HUGHES HUBBARD & REED LLP**
William R. Stein
Eric S. Parnes
1775 I Street, N.W.
Washington, D.C. 20006
(202) 721-4600

*Counsel for Defendants Merck & Co., Inc., Raymond V. Gilmartin, Peter S. Kim, Alise S. Reicin, Judy C. Lewent, Kenneth C. Frazier, Richard C. Henriques, Jr., David Anstice, Per Wold-Olsen, Lawrence A. Bossidy, William G. Bowen, Johnnetta B. Cole, Niall FitzGerald, William B. Harrison, Jr., William N. Kelley, Heidi G. Miller, Thomas E. Shenk, Anne M. Tatlock, and Samuel O. Thier*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCK & CO., INC., SECURITIES, DERIVATIVE & "ERISA" LITIGATION | MDL No. 1658 (SRC) |
| THIS DOCUMENT RELATES TO: THE CONSOLIDATED SECURITIES ACTION | Case No. 2:05-CV-01151-SRC-CLW Case No. 2:05-CV-02367-SRC-CLW |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' APPEAL OF THE OCTOBER 5, 2012 DECISION OF THE MAGISTRATE JUDGE

Motion Date:  November 19, 2012

REDACTED

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

Preliminary Statement............................................................................................................1

Legal Standard .........................................................................................................................3

Argument .................................................................................................................................4

I.  JUDGE WALDOR'S RULING INAPPROPRIATELY EXTENDED THE
    HOLDING IN *WESTINGHOUSE* AND VITIATED MERCK'S PRIVILEGE. ................4

II. THE WAIVER RULE DEVELOPED BY COURTS WITHIN THE SECOND
    CIRCUIT IS COMPATIBLE WITH THE *WESTINGHOUSE* FRAMEWORK. ...............8

III. PRESERVATION OF MERCK'S PRIVILEGE IN THIS CASE WOULD NOT
    BE CONTRARY TO THE LAW OF THIS CIRCUIT OR THIS DISTRICT.................11

Conclusion ..............................................................................................................................12

REDACTED

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119 (D.N.J. 1998) ...................................12

*Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997)............................................9

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1978) .............................................10

*Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006) ......................................3

*Enron Corp v. Borget*, No. 88 Civ. 2828, 1990 WL 144879 (S.D.N.Y. Sept. 22, 1990) ..........6, 10

*Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409 (Fed. Cir. 1997)................9

*Gruss v. Zwirn*, 276 F.R.D. 115 (S.D.N.Y. 2011) .......................................................................10

*Haines v. Liggett Grp. Inc.*, 975 F.2d 81 (3d Cir. 1992).................................................................3

*In re Bristol-Myers Squibb Sec. Litig.*, No. Civ.A. 00-1990, 2005 WL 2007004
  (D.N.J. Aug. 17, 2005).................................................................................................................3

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289
  (6th Cir. 2002).............................................................................................................................9

*In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274 (S.D.N.Y. 1995) ..................................6, 10

*In re Linerboard Antitrust Litig.*, 237 F.R.D. 373 (E.D. Pa. 2006) .............................................12

*In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689 (D. Colo. 1993).................................................6

*In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988) .........................................................9

*In re Pacific Pictures Corp.*, No. 11-71844, 2012 WL 1640627 (9th Cir. May 10,
  2012) ...........................................................................................................................................9

*In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179 (10th Cir. 2006)................................................9

*In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993)........................................................8, 9

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412 (N.D. Ill.
  2006) ...........................................................................................................................................6

*Permian Corp. v. United States*, 665 F.2d 1214 (D.C. Cir. 1981)................................................9

*Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797, 2010
  WL 935317 (S.D.N.Y. Mar. 12, 2010) ..................................................................................6, 10

**Page(s)**

*Republic of the Philippines v. Westinghouse Electric Corp.*, 132 F.R.D. 384 (D.N.J. 1990) ............................................................................................................................5

*Shionogi Pharma, Inc. v. Mylan Pharm., Inc.*, No. 10-1077, 2011 WL 6651274 (D. Del. Dec. 21, 2011)....................................................................................................11

*Teachers Ins. & Annuity Ass'n of Am. v. Shamrock Broad. Co.*, 521 F. Supp. 638 (S.D.N.Y. 1981)..........................................................................................................10

*United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681 (1st Cir. 1997) .................9

*United States v. Murray*, 468 F. App'x 104 (3d Cir. 2012)...........................................11

*United States v. Wilson*, 493 F. Supp. 2d 348 (E.D.N.Y. 2006).................................6, 10

*Wachtel v. Guardian Life Ins. Co.*, Nos. 01-4183, 03-1801, 2006 WL 1286188 (D.N.J. May 8, 2006) ....................................................................................................11

*Wawrzynek v. Gliatech, Inc.*, No. Civ.A. 03-5346, 2004 WL 887414 (E.D. Pa. Mar. 26, 2004).................................................................................................................12

*Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir. 1991) ................................................................................................................... passim

**Statutes & Rules**

28 U.S.C. § 636(b)(1)(A)....................................................................................................3

Fed. R. Civ. P. 72(a) .....................................................................................................1, 3

L. Civ. R. 72.1(c)(1)...........................................................................................................1

L. Civ. R. 72.1(c)(1)(A)......................................................................................................3

REDACTED

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 72.1(c)(1), Defendants Merck & Co., Inc. ("Merck"), Raymond V. Gilmartin, Peter S. Kim, Alise S. Reicin, Judy C. Lewent, Kenneth C. Frazier, Richard C. Henriques, Jr., David Anstice, Per Wold-Olsen, Lawrence A. Bossidy, William G. Bowen, Johnnetta B. Cole, Niall FitzGerald, William B. Harrison, Jr., William N. Kelley, Heidi G. Miller, Thomas E. Shenk, Anne M. Tatlock, and Samuel O. Thier (collectively, "Defendants") respectfully submit this memorandum of law in support of their appeal of the ruling set forth in the October 5, 2012 Letter Opinion of Magistrate Judge Waldor (the "Letter Opinion") regarding the discoverability of privileged materials that Merck provided to the United States Department of Justice ("DOJ") pursuant to a confidentiality and non-waiver agreement.

## PRELIMINARY STATEMENT

Defendants appeal from the October 5, 2012 ruling of Magistrate Judge Waldor holding that Plaintiffs are entitled to discover privileged documents that Merck provided to the DOJ, even though those materials were provided pursuant to an express confidentiality and non-waiver agreement. On May 25, 2012, Plaintiffs moved to compel the production of six broad categories of documents. Included within one of those categories were privileged documents that Merck provided to the DOJ in connection with a government investigation. (*See* Ex. 1, at 6.)[1] Merck provided those documents to the DOJ pursuant to an agreement that both ensured that the government would maintain the confidentiality of the privileged materials produced to it (*see* Ex. 2, ¶¶ 5-6) and expressly provided that ████████████████████████ ████████████████████████████████████████████████████████ (*id.*

---

[1] Citations in the form "Ex. __" refer to exhibits attached to the Declaration of Matthew J. Boggess in Support of Defendants' Appeal of the October 5, 2012 Decision of the Magistrate Judge, dated October 19, 2012 and submitted herewith.

REDACTED

¶ 4).  That agreement has been produced to Plaintiffs on an attorneys' eyes only basis and was submitted to Judge Waldor under seal by agreement of the parties.

Judge Waldor concluded that Merck had waived the privilege by providing the material to the DOJ.  (*See* Ex. 3, Ltr. Op. at 2-5.)  In reaching this conclusion, Judge Waldor extended the holding of *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir. 1991), which concerned an agreement providing only that documents produced to the government would remain confidential, beyond its appropriate limit.  In so doing, Judge Waldor disregarded the *Westinghouse* court's explicit signal that its holding would *not* apply to cases, like this one, where a party had entered an agreement with the government that provided for *both* confidentiality *and* non-waiver.  *Id.* at 1427.  Further, Judge Waldor refused to follow the rulings of courts that *have* addressed non-waiver agreements like that here—including district courts in the Second Circuit—and that concluded under similar circumstances that the privilege was preserved.  In rejecting this well-reasoned authority, Judge Waldor offered the explanations that:  (i) "the Second Circuit's position toward selective waiver . . . is much broader than *Westinghouse* allows"; and (ii) "*Westinghouse* remains the law of this Circuit and this District."  (Ex. 3, Ltr. Op. at 5.)  Respectfully, Judge Waldor's ruling was not compelled by Third Circuit precedent, and is contrary to other courts' well-reasoned decisions addressing the legal issue here.  The October 5, 2012 ruling on the waiver of privilege must be reversed.

*First*, because preserving the privilege with respect to documents provided to the government pursuant to an agreement that provides for *both* confidentiality *and* non-waiver is entirely consistent with *Westinghouse* and appropriately balances the needs of the court system with the important public policy goal of encouraging cooperation with the government, Merck's

assertion of privilege over the documents it provided to the DOJ pursuant to such an agreement should have been preserved.

    *Second*, because *Westinghouse* explicitly signaled that agreements that both preserve confidentiality and provide for non-waiver against third parties would be effective to preserve privilege with respect to documents provided to the government, that decision is compatible with the case law developed by courts within the Second Circuit and does not preclude this Court from adopting the waiver rule applied by those courts.

    *Third*, while *Westinghouse* indeed remains the law of this Circuit, no court in the Third Circuit (except Judge Waldor) has held that a party's confidential disclosure to the government waives attorney-client privilege in the face of an express agreement providing that the disclosure does not constitute such a waiver. As such, enforcing such a non-waiver agreement and preserving the privilege is consistent with the law of this Circuit.

**LEGAL STANDARD**

    A district court must reverse a magistrate judge's determination of a non-dispositive issue if it is "clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A) (providing that the district judge shall "set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law"); *see* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Unlike the highly deferential "clearly erroneous" standard applied to determinations of fact, "the district court conducts a de novo review of a magistrate judge's legal conclusions." *In re Bristol-Myers Squibb Sec. Litig.*, No. Civ.A. 00-1990, 2005 WL 2007004, at *7 (D.N.J. Aug. 17, 2005) (Chesler, J.) (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)). Under this de novo review, the decision of a magistrate judge is contrary to law "when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).

3

REDACTED

**ARGUMENT**

I. **JUDGE WALDOR'S RULING INAPPROPRIATELY EXTENDED THE HOLDING IN *WESTINGHOUSE* AND VITIATED MERCK'S PRIVILEGE.**

In concluding that Merck had waived privilege by submitting documents to the DOJ pursuant to the express confidentiality and non-waiver agreement, Judge Waldor extended the holding of *Westinghouse* beyond the factual setting in that case to reach an unprecedented result. Rather than applying the ruling in *Westinghouse* to a set of facts that were not at issue in that case—and, indeed, which the Third Circuit suggested would have warranted a contrary result—Judge Waldor should have applied the case law directly on point that has developed after *Westinghouse* to hold that Merck's privilege was preserved because its disclosures to the DOJ were made pursuant to an express confidentiality and non-waiver agreement.

In *Westinghouse*, the defendant had retained outside counsel to conduct an internal investigation in response to an inquiry from the Securities and Exchange Commission ("SEC") regarding allegedly illegal payments it received in connection with its procurement of a contract to construct a nuclear power plant in the Republic of the Philippines. 951 F.2d at 1418-19. When that investigation concluded, Westinghouse provided a letter to the SEC summarizing the findings of its outside counsel. *Id.* at 1418. That same year, the DOJ opened its own investigation, focusing not just on Westinghouse's work in the Philippines, but in other countries. That investigation initially concluded when Westinghouse entered a plea agreement regarding payments made to Egypt, but, eight years later, after the President of the Philippines was ousted, the DOJ reopened its investigation of the Philippines matter. *Id.* at 1419. In the renewed investigation, the DOJ subpoenaed the privileged reports prepared by Westinghouse's outside counsel in response to the SEC inquiry, and also sought all materials accumulated in connection with those reports. *Id.* Westinghouse initially moved to quash the subpoena, but it

4

REDACTED

ultimately withdrew that motion and entered an agreement with the DOJ providing that the agency would not disclose Westinghouse's privileged materials to any third party.  *Id.*

In a subsequent civil action, the Republic of the Philippines sought discovery of the materials that Westinghouse provided to the SEC and the DOJ.  *See Republic of the Philippines v. Westinghouse Electric Corp.*, 132 F.R.D. 384, 386 (D.N.J. 1990).  The district court required that the materials be produced, finding that both attorney-client privilege and work product protection had been waived.  *See id.* at 391.  The Court of Appeals for the Third Circuit affirmed, holding that Westinghouse's voluntary disclosure of materials to the DOJ waived both attorney-client privilege and work product protection with respect to those materials, despite the defendant having entered into a confidentiality agreement with the DOJ.[2]  *Westinghouse*, 951 F.2d at 1431.  However, with respect to attorney-client privilege, the court specifically noted that "the agreement between Westinghouse and the DOJ . . . *does not appear in any way to have purported to preserve Westinghouse's right to invoke the privilege against a different entity in an unrelated civil proceeding.*"  *Id.* at 1427 (emphasis added).  The Third Circuit thus signaled that when a party voluntarily discloses privileged information to the government, an agreement with the government preserving *both* confidentiality *and* the party's right to assert the privilege against third parties would be effective to avoid waiver.[3]

Consistent with *Westinghouse*, numerous courts, including district courts in the Second Circuit, have found the privilege preserved with respect to privileged materials provided to the government pursuant to an appropriate confidentiality and non-waiver agreement.

_____

[2] The Court further held that the privilege had been waived with respect to the materials that Westinghouse provided to the SEC.  *Westinghouse*, 951 F.2d at 1427.  Westinghouse had *not* entered into any sort of confidentiality and/or non-waiver agreement with that agency.  *Id.*

[3] With respect to work product protection, the *Westinghouse* court stated that its ruling was not affected by the existence or non-existence of any agreement with the government.  951 F.2d at 1430-31.

*See, e.g.*, *Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797, 2010 WL 935317, at *1 (S.D.N.Y. Mar. 12, 2010) (upholding privilege where disclosure to government had been made pursuant to confidentiality agreement with "non-waiver provision" that preserved privilege claims against subsequent third party private litigants); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 430, 433 (N.D. Ill. 2006) (finding no waiver where agreement with SEC provided that disclosing party did not "waive the protections of the attorney work product doctrine, attorney-client privilege, or any other privilege applicable as to third parties"); *In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 284 (S.D.N.Y. 1995) (upholding privilege where disclosures to government "were made pursuant to confidentiality agreements intended to preserve any privilege applicable to the disclosed documents"); *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, 696 (D. Colo. 1993) (finding no waiver of attorney-client privilege where agreement with United States Attorneys' Office provided "that the provision of information does not constitute a waiver of the privilege as to any proceeding under state or federal law"); *Enron Corp v. Borget*, No. 88 Civ. 2828, 1990 WL 144879, at *1-2 (S.D.N.Y. Sept. 22, 1990) (upholding privilege where defendant had "specifically reserved all applicable legal privileges and rejected any implication of waiver from [its] submission"); *cf. United States v. Wilson*, 493 F. Supp. 2d 348, 360-63 (E.D.N.Y. 2006) (finding no waiver of doctor-patient privilege in the presence of an "express non-waiver agreement" with the District Attorney).  As these cases demonstrate, the type of confidentiality and non-waiver agreement envisioned by the Third Circuit in *Westinghouse* is regularly found to be effective to preserve the privilege.

Defendants respectfully submit that Judge Waldor erred in rejecting this well-reasoned authority and extending the holding of *Westinghouse* to the facts of this case.  Merck's

agreement with the DOJ both ensured that the government would maintain the confidentiality of

the materials produced to it (*see* Ex. 2, ¶¶ 5-6) and expressly provided that ███████████

████████████████████████████████████████████████████████████████

████████████████████ (*id.* ¶ 4).  Thus, unlike the defendant in *Westinghouse*, Merck

expressly preserved its "right to invoke the privilege against a different entity in an unrelated

civil proceeding."  *See* 951 F.2d at 1427.  Because Merck took these key steps to maintain

confidentiality and reserve its right to assert the privilege against third parties, *Westinghouse*

does not support a finding of waiver of privilege in this case, and in fact counsels against it.

Indeed, preserving the privilege in situations like the present case strikes an

appropriate balance between the competing goals of encouraging voluntary cooperation with the

government, furthering the search for truth, and protecting the confidentiality of communications

between attorney and client that is so integral to our entire legal system.  A rule that permits

parties to preserve privilege by way of a confidentiality and non-waiver agreement with the

government draws a clear distinction between cases in which a party merely seeks to avoid the

disclosure of proprietary or other sensitive information to competitors and other third parties, and

cases in which a party has been careful to ensure that, notwithstanding its cooperation with

government investigations, its privileged documents and communications remained protected

against private litigants.  Such a distinction ensures that parties under government investigation

are not faced with a stark choice between disclosure to the government—and, consequently,

every conceivable private litigant—and no disclosure at all.  Indeed, the bright-line waiver rule

adopted in Judge Waldor's Letter Opinion would only discourage cooperation with the

government and would ultimately obstruct the search for truth and dissemination of information

to the public—the very goals cited by the Third Circuit in *Westinghouse*.  *See* 951 F.2d at 1425-

26.  As such, this Court should follow the Third Circuit's signal in *Westinghouse*—as well as the decisions of the courts that *have* addressed the precise question at issue here—and preserve Merck's privilege with respect to the documents that it provided to the DOJ.

## II.    THE WAIVER RULE DEVELOPED BY COURTS WITHIN THE SECOND CIRCUIT IS COMPATIBLE WITH THE *WESTINGHOUSE* FRAMEWORK.

Judge Waldor concluded that the Court could not follow the more factually relevant case law developed by the district courts in the Second Circuit because the approach adopted by those courts is "much broader" than, and conflicts with, the Third Circuit's holding in *Westinghouse*.  (*See* Ex. 3, Ltr. Op. at 5.)  That conclusion was erroneous.  Instead, the rule developed within the Second Circuit is entirely consistent with the Third Circuit's signal in *Westinghouse* that privileged documents provided to the government pursuant to an express confidentiality and non-waiver agreement would remain protected.

As Judge Waldor observed, the Third Circuit in *Westinghouse* was careful to note that *Westinghouse* was not a case in which the disclosing party had reserved its "right to invoke the privilege against a different entity in an unrelated civil proceeding."  (*See id.* at 4 (quoting *Westinghouse*, 951 F.2d at 1427).)  Consistent with that distinction, the district courts within the Second Circuit have repeatedly upheld the privilege with respect to documents disclosed to the government when a confidentiality agreement expressly preserves the right to assert the privilege against third parties.  (*See supra* Part I.)  These cases derive in part from the Second Circuit's warning in *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993), that "[e]stablishing a rigid rule [against selective waiver] would fail to anticipate situations in which . . . the [government] and the disclosing party have entered into an explicit agreement that the [government] will maintain the confidentiality of the disclosed materials."  *Id.* at 236.  In *Steinhardt*, the Second Circuit explained that "[c]rafting rules relating to privilege in matters of governmental

8

REDACTED

investigations must be done on a case-by-case basis." *Id.*  The Second Circuit thus cautioned

that *per se* waiver rules will in some cases be inappropriate when applied to a party's voluntary

cooperation with a government investigation.  *Id.*

Judge Waldor, however, erroneously interpreted *Steinhardt*'s warning against the

"rigid" application of the waiver doctrine as announcing a rule that is "much broader" than the

Third Circuit's holding in *Westinghouse*.  (*See* Ex. 3, Ltr. Op. at 5.)  While it is true that in

*Steinhardt* "the existence of a confidentiality agreement itself" might have generally "counseled

in favor of preserving the privilege" (*id.*), those facts were not actually before the court in that

case.  Instead, *Steinhardt* was a case in which *no agreement* had been entered between the

government and the disclosing party.  *See* 9 F.3d at 232.  Rather than announcing a rule, the

Second Circuit merely signaled to the lower courts (as the Third Circuit did in *Westinghouse*)

that under a different set of facts, its holding might have been different.[4]  The Second Circuit's

---

[4] Like the Second and Third Circuits, most Circuits either have not reached the precise
question at issue here or have expressly left open the possibility that confidentiality and non-
waiver agreements could preserve the privilege.  *See, e.g.*, *United States v. Mass. Inst. of Tech.*,
129 F.3d 681, 683, 686 (1st Cir. 1997) (Boudin, J.) (involving agreement that did not provide for
confidentiality or non-waiver of privilege); *In re Martin Marietta Corp.*, 856 F.2d 619, 623-24
(4th Cir. 1988) (finding waiver in case where agreement apparently did not provide for
confidentiality or non-waiver); *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1127
(7th Cir. 1997) (Posner, J.) (noting in dicta that "[i]n the case of selective disclosure, the courts
feel, reasonably enough, that the possessor of the privileged information should have been more
careful, as by obtaining an agreement by the person to whom they made the disclosure not to
spread it further"); *In re Pacific Pictures Corp.*, No. 11-71844, 2012 WL 1640627, at *2, *5
(9th Cir. May 10, 2012) (considering agreement with government that preserved confidentiality
only and did not purport to limit scope of waiver of privilege); *In re Qwest Commc'ns Int'l Inc.*,
450 F.3d 1179, 1194 (10th Cir. 2006) (finding waiver where confidentiality agreements were not
sufficiently restrictive); *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409,
1417 (Fed. Cir. 1997) (finding waiver based on disclosure that was merely "the result of
inadequate screening procedures").  Only the Sixth and D.C. Circuits have explicitly held that
disclosures to the government pursuant to a confidentiality agreement with a non-waiver
provision waive attorney-client privilege.  *See In re Columbia/HCA Healthcare Corp. Billing
Practices Litig.*, 293 F.3d 289, 302-04 (6th Cir. 2002); *Permian Corp. v. United States*, 665
F.2d 1214, 1219-22 (D.C. Cir. 1981).  The Eighth Circuit, by contrast, permits selective waiver

9

holding in *Steinhardt*, therefore, does not conflict with the Third Circuit's holding in *Westinghouse*.

Nor do the decisions of the Second Circuit's district courts conflict with *Westinghouse* on this issue.  Following *Steinhardt*, the district courts in the Second Circuit addressed the sorts of factual scenarios envisioned in the *Steinhardt* opinion and developed an approach that upholds the privilege when documents are disclosed to the government pursuant to agreements that preserve *both* confidentiality *and* the disclosing party's right to assert the privilege against third parties.  *See Gruss v. Zwirn*, 276 F.R.D. 115, 141-42 (S.D.N.Y. 2011) (observing that "[s]ubsequent cases have applied th[e] [*Steinhardt*] dictum" to preserve the privilege "where the [government] and the disclosing party entered into a confidentiality agreement *that reserves application of the privilege in subsequent proceedings*" (emphasis added)); *see also SafeNet*, 2010 WL 935317, at *1-2; *In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. at 284; *cf. Wilson*, 493 F. Supp. 2d at 360-63.  In fact, even prior to *Steinhardt*, at least one district court in the Second Circuit had found a confidentiality and non-waiver agreement to be effective to preserve the privilege as to documents submitted to the government.  *See Enron*, 1990 WL 144879, at *1; *cf. Teachers Ins. & Annuity Ass'n of Am. v. Shamrock Broad. Co.*, 521 F. Supp. 638, 644-45 (S.D.N.Y. 1981) (noting that "disclosure to the [government] should be deemed to be a complete waiver of the attorney-client privilege unless the right to assert the privilege in subsequent proceedings is specifically reserved at the time the disclosure is made").  Thus, while the "existence of a confidentiality agreement itself" surely "counseled in favor of preserving the privilege" in the decisions of the Second Circuit's district courts, the rule *as applied* by those courts is more exacting:  privileged documents provided to the government

---

even outside the presence of an agreement with the government.  *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978).

pursuant to an agreement that preserves *both* confidentiality *and* the disclosing party's right to assert the privilege against third parties remain privileged.

        As such, the waiver rule discussed by the Second Circuit and applied by its lower courts is no "broader" than *Westinghouse* allows.  Instead, the rule developed by those courts is entirely consistent with the Third Circuit's signal in *Westinghouse* that privileged documents provided to the government pursuant to an express confidentiality and non-waiver agreement would remain protected.  Judge Waldor's conclusion that *Westinghouse* precludes this Court from adopting the approach taken by the courts within the Second Circuit was therefore erroneous, and the decision must be reversed.

## III.  PRESERVATION OF MERCK'S PRIVILEGE IN THIS CASE WOULD NOT BE CONTRARY TO THE LAW OF THIS CIRCUIT OR THIS DISTRICT.

        While the Letter Opinion accurately states that "*Westinghouse* remains the law of this Circuit and this District" (Ex. 3, Ltr. Op. at 5), Judge Waldor erroneously interpreted this fact to conclude that preserving the privilege with respect to documents submitted to the government pursuant to a confidentiality and non-waiver agreement would be contrary to the law of this Circuit and this District.  However, as explained above, *Westinghouse* did not consider the precise issue raised here (and in fact suggests a result contrary to Judge Waldor's holding), and none of the Third Circuit or District of New Jersey authorities cited in the Letter Opinion involved the production of privileged documents to the government pursuant to a confidentiality and non-waiver agreement.  *See United States v. Murray*, 468 F. App'x 104, 108 (3d Cir. 2012) (unpublished decision) (involving assertion of privilege over letters submitted to IRS apparently without agreement providing for confidentiality or non-waiver); *Shionogi Pharma, Inc. v. Mylan Pharm., Inc.*, No. 10-1077, 2011 WL 6651274, at *1 (D. Del. Dec. 21, 2011) (involving potential disclosure of two opinions of counsel in patent infringement action); *Wachtel v. Guardian Life*

*Ins. Co.*, Nos. 01-4183, 03-1801, 2006 WL 1286188, at *1 (D.N.J. May 8, 2006) (upholding assertion of privilege with respect to certain testimony and documents submitted *in camera*); *Wawrzynek v. Gliatech, Inc.*, No. Civ.A. 03-5346, 2004 WL 887414, at *1 (E.D. Pa. Mar. 26, 2004) (involving plea agreement that did not expressly reserve right to assert privilege against third parties); (*see also* Ex. 3, Ltr. Op. at 5).  Indeed, Defendants are unaware of any court in the Third Circuit that has extended the *Westinghouse* decision to a case involving facts similar to those now before this Court.  *See In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 387-91 (E.D. Pa. 2006) (involving only work product protection); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 131 (D.N.J. 1998) (finding waiver of work product protection only and involving solely a letter—not an agreement—stating that "delivery of the documents [was] not intended to be . . . construed as a waiver of any privilege or assertion of confidentiality" (alteration in original)).  Courts outside this Circuit, by contrast, have repeatedly addressed this issue, and have concluded that the privilege must be preserved.  (*See supra* Parts I & II.)  Judge Waldor's conclusion that the law of this Circuit and this District requires a finding of waiver in this case was therefore contrary to law.

CONCLUSION

For the reasons set forth above, Defendants respectfully request that Magistrate Judge Waldor's October 5, 2012 ruling regarding the discoverability of privileged materials that Merck provided to the government pursuant to a confidentiality and non-waiver agreement be reversed, and that Plaintiffs' motion to compel discovery of such materials be denied.

REDACTED

Dated:  October 19, 2012

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

Evan R. Chesler
Robert H. Baron
Karin A. DeMasi

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rbaron@cravath.com

HUGHES HUBBARD & REED LLP
William R. Stein
Eric S. Parnes
1775 I Street, N.W.
Washington, D.C. 20006-2401
(202) 721- 4600

*Counsel for Defendants Merck & Co., Inc.,
Raymond V. Gilmartin, Peter S. Kim, Alise S.
Reicin, Judy C. Lewent, Kenneth C. Frazier,
Richard C. Henriques, Jr., David Anstice, Per
Wold-Olsen, Lawrence A. Bossidy, William G.
Bowen, Johnnetta B. Cole, Niall FitzGerald,
William B. Harrison, Jr., William N. Kelley,
Heidi G. Miller, Thomas E. Shenk, Anne M.
Tatlock, and Samuel O. Thier*

13